IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SIMMONS,<br><br>               *Plaintiff*,<br><br>   v.<br><br>SIMPSON HOUSE, INC. *et al.*,<br><br>              *Defendants*. | CIVIL ACTION<br>No. 15-06636 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**December 12, 2016**

<u>**MEMORANDUM**</u>

      Ola Simmons moved into Simpson House Nursing Home because she was suffering from senile psychosis and episodic incontinence. During her five-month residence there, she developed pressure sores, experienced excessive weight loss and contracted multiple infections. Ola was transferred to Prime-Roxborough Hospital where her condition continued to decline. After less than a month at Prime-Roxborough, she moved to Kindred Hospital. Ola died roughly two months later while in hospice care. Ola's son, John Simmons, filed this lawsuit alleging that Simpson House, Prime-Roxborough and Kindred neglected his mother and provided her substandard and negligent care, which exacerbated Ola's health problems and ultimately caused her death.

      Simmons, in his own right and as the Administrator of Ola's estate, asserts claims of negligence, wrongful death and survival, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against Simpson House and Simpson House, Inc. ("Simpson House"), Prime Healthcare Services-Roxborough, LLC ("Prime-Roxborough") and Kindred Hospital-South Philadelphia and Kindred Healthcare Inc. ("Kindred"). Before the Court are motions to dismiss by Simpson House (ECF No. 47) and

1

Prime-Roxborough (ECF No. 48).[1]  For the reasons discussed below, the Court denies the motions to dismiss with respect to Counts 1, 2, 4, 5, 8, 9, 10, 11, and grants the motion with respect to Counts 3 and 18.

## I.

### A.

Ola Simmons was admitted to Simpson House on November 11, 2013 and was "totally dependent upon [the] staff for her mental, physical, psycho-social and medical needs." (2d Am. Compl. ¶¶ 3, 14.)  Ola did not have any skin abnormalities upon admission.  (*Id.* ¶ 17.)  Simpson House, however, made no plans to protect the integrity of Ola's skin or prevent skin breakdown and failed to perform weekly skin assessments in a manner consistent with professional standards of care.  (*Id.* ¶¶ 18–19.)  Ola subsequently developed pressure sores which Simpson House failed to properly document.  (*Id.* ¶ 20.)  Simpson House also allegedly failed to prevent Ola from falling out of her bed.  (*Id.* ¶¶ 21–22.)

On April 9, 2014 Ola's records showed that she had experienced a 9.4 % weight loss over the course of one month.  (*Id.* ¶ 25.)  John Simmons contends Simpson House failed to assess, monitor and treat his mother's condition in violation of federal and state nursing home regulations.  (*Id.*)  On April 13, 2014 Ola was transferred from Simpson House to Prime-Roxborough Hospital.  (*Id.* ¶ 26.)  At the time of her admission to Prime-Roxborough, Ola was diagnosed with numerous medical issues, various infections and an acute kidney injury related to dehydration.  (*Id.*)  Simmons contends that his mother did not have any of these conditions prior to her admission at Simpson House.  (*Id.*)  Prime-Roxborough admitted Ola to the intensive care

---

[1]  By separate order, the Court denies Kindred's motion to dismiss Counts 6, 7, 12, 13, 14 and 15 without prejudice.  (ECF No. 55.)

unit where she received a tracheostomy and a PEG tube to help with nutrition and oxygen therapy. (*Id.* ¶¶ 28–29.)

From April 14 to April 19, 2014, Prime-Roxborough did not treat Ola's pressure sores. (*Id.* ¶¶ 31–36.) By April 19, she had developed a Stage I pressure sore on her sacrum and coccyx area and superficial reddening of the skin. (*Id.* ¶ 37.) Two days later a nurse observed for the first time that Ola had a "skin tear with edema or swelling to her right lateral extremity." (*Id.* ¶ 40.) Ola's pressure sores grew larger and more severe during her stay at Prime-Roxborough. (*Id.* ¶¶ 41–57.)

On May 5, 2014 Ola was transferred from Prime-Roxborough to Kindred for "sub acute care and rehabilitation." (*Id.* ¶ 59.) There was no mention of her leg wound in her discharge papers. (*Id.*) Although Kindred diagnosed Ola's sacral wounds as Stage II on May 5, they did not "treat, assess or evaluate" those wounds until May 8, 2014. (*Id.* ¶ 60.)

On June 10, 2014 Ola went into cardiac arrest during a transfer from Kindred to another facility. (*Id.* ¶ 76.) Ola recovered and remained at Mercy Suburban Hospital until June 17, 2014, when she was discharged for ventilator management. (*Id.* ¶ 77.) Ola's diagnosis at discharge was extensive and included malnutrition and pneumonia in addition to pressure sores on her lower exterminates and sacral region. (*Id.* ¶ 78.) She was transferred to Aristacare at Meadow Springs where she died on July 12, 2014 from "respiratory failure and atrial fibrillation." (*Id.* ¶ 79.)

**B.**

John Simmons filed his original complaint on December 15, 2015 against Simpson House, Solis Healthcare, LLC[2] and Prime-Roxborough, alleging negligence, wrongful death and survival. (ECF No. 1.) Defendants filed motions to dismiss the complaint for failure to state a

---

[2]   Solis Healthcare was dismissed by stipulation of all parties on April 5, 2016. (ECF No. 24.)

claim. (ECF Nos. 6 & 14.) On April 21, 2016 the Court granted the motions but allowed Simmons leave to file an amended complaint. (ECF No. 26.)

Simmons filed an amended complaint against Simpson House and Prime-Roxborough on May 23, 2016. (ECF No. 29.) On June 8, 2016 Simpson House filed a motion to dismiss the amended complaint, in part because Simmons failed to join an indispensable party—Kindred. Two days later, Simmons filed a "Petition to Amend/Correct Caption and Complaint" and specifically sought to join Dr. Waheeda Ali and Kindred as new defendants. (ECF No. 31.)[3]

On June 30, 2016 the Court denied Simmons's Petition. It directed Simmons to seek Defendants' consent or to file a proper motion for leave to amend. (ECF No. 36). On July 8, 2016 Simmons moved for leave to file an amended complaint under Rule 15. (ECF No. 37.) The Court granted Simmons's motion on July 28, 2016, (ECF Nos. 31-4 & 31-5), and deemed the amended complaint filed as of the same date. (ECF No. 45.) This amended complaint is Simmons's second amended complaint, and it is the operative complaint before the Court.[4]

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a

---

[3] Dr. Ali filed a motion to dismiss Counts 16 and 17 in the second amended complaint, (ECF No. 62), which the Court granted on November 18, 2016, (ECF Nos. 63 & 64).

[4] Meanwhile, Simmons filed a Writ of Summons in the Philadelphia County Court of Common Pleas on May 6, 2016. He thereafter filed a nearly identical complaint in the state court on August 11, 2016 against Simpson House, Inc., Simpson House Foundation, Prime Healthcare Services-Roxborough, LLC, Kindred Healthcare, Inc. and Kindred Hospital-South Philadelphia. Defendants removed the action to this Court on September 9, 2016. *See* (No. 16-04855, ECF No. 1).

4

complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of

5

whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### III.

Simmons asserts common law negligence claims against Simpson House and Prime-Roxborough under vicarious liability, direct liability and negligence *per se* theories. "To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 597 (Pa. 2012). "Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of a duty owing directly to the plaintiff." *Id.* Vicarious liability "is a policy-based allocation of risk" that holds one party liable for the actions of another due to a preexisting relationship between the two parties. *Id.* (citing *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1181 (Pa. 1992)). It is true, however, that "[w]here a corporation is concerned, the ready distinction between direct and vicarious liability is somewhat obscured because we accept the general premise that the corporation acts through its officers, employees, and other agents." *Id.* (citing *Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1196 (Pa. 2012)). Negligence *per se*, meanwhile, is not a separate cause of action, but is instead an evidentiary presumption that, if established, constitutes proof of a breach of duty. *See Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002).

## A.

Simmons alleges that Simpson House and Prime-Roxborough are vicariously liable for the negligence of their employees. Under a vicarious liability theory, the corporation is deemed to have assumed the risk of its individual agents' negligence; thus, "an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." *R.A. ex rel. N.A. First Church of Christ*, 748 A.2d 692, 699 (Pa. Super. Ct. 2000).

To succeed under a theory of vicarious liability, Simmons must prove that Defendants' employees acted negligently and caused Ola harm. A successful negligence claim requires a plaintiff to "allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to the actual damages suffered by the plaintiff." *Garlick v. Trans. Tech. Logistics, Inc.*, 636 F. App'x 108, 114 (3d Cir. 2015) (quoting *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 596 (Pa. 2012)).

"The question of duty in tort is a legal determination, assigned in the first instance to the trial court." *Scampone*, 57 A.3d at 600 (quotation omitted). To determine whether a defendant owes a plaintiff a duty of care, the Court must consider several factors: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.* (quoting *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000)). "While no individual factor is dispositive, 'a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant.'" *Citizens Bank*, 609 F. App'x at 92 (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008–09 (Pa. 2003)).

Ola Simmons was a resident-patient at Simpson House nursing home and a patient at Prime-Roxborough and Kindred hospitals.  "[A] duty of care arises when a physician-patient relationship is established." *Estate of Francis v. Northumberland Cty.*, 636 F. Supp. 2d 368, 390 (M.D. Pa. 2009) (citing *Winschel v. Jain*, 925 A.2d 782, 796 (Pa. Super. Ct. 2007)).  Simmons has pled enough facts to establish that at least some of Defendants' employees, to the extent a physician-patient relationship was established, owed Ola Simmons a duty of care.

Once a plaintiff makes a prima facie showing of a duty, however, the standard of care and the defendant's satisfaction of that standard are questions of fact.  *See K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1094 (Pa. Super. Ct. 2015), *reargument denied* (Oct. 28, 2015), *appeal denied*, 135 A.3d 586 (Pa. 2016) (citing *Joyce v. Blvd. Phys. Therapy & Rehab. Ctr., P.C.*, 694 A.2d 648, 654–55 (Pa. Super. Ct. 1997)).

To establish a causal connection between Defendants' negligence and Ola's harm (and ultimate death), Simmons must show that Defendants' actions were a proximate cause of Ola's injuries.  *Giehl v. Terex Utilities*, No.___, 2012 WL 1183719, at *4 (M.D. Pa. Apr. 9, 2012) (citing *Hamil v. Bashline*, 392 A.2d 1280, 1284 (1978)).  Proximate cause "may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm." *Hamil*, 393 A.2d at 1284.  "Because the issue of proximate cause is inherently fact-based, causation is generally a question of fact for the jury." *Giehl*, 2012 WL 1183719, at *5 (citing *Summers Cetainteed Corp.*, 997 A.2d 1152, 1164 (Pa. 2010)).  "However, 'where it is clear that reasonable minds could not differ on the issue,' the issue of causation may be removed from the trier of fact's consideration.'" *Id.* (quoting *Hamil*, 392 A.2d at 1285–86).

**B.**

Simmons also alleges direct negligence, also known as corporate liability, against Simpson House and Prime-Roxborough. *See* (2d Am. Compl. Counts 2 & 5). "In contrast to a hospital's potential vicarious liability for its employees' actions, a cause of action for corporate liability 'is independent of the negligence of the hospital's employees or ostensible agents' and 'arises from the polices, actions or inaction of the institution itself.'" *Estate of Goldberg v. Nimoityn*, ___ F. Supp. 3d ___, No.14-980, 2016 WL 3362056, *6 (E.D. Pa. June 17, 2016) (quoting *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996)). "Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts." *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997) (citation omitted).

The doctrine of corporate negligence was first recognized by the Pennsylvania Supreme Court in *Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991), which held that hospitals owe patients: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. *Id.* at 707. A hospital is liable under this theory if "it fails to uphold the proper standard of care owed to its patient." *Id.* at 708. "It is important to note that for a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm." *Id*. Moreover, "the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." *Id.*

The doctrine of corporate negligence is not limited to hospitals. In *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 606–07 (Pa. 2012), the Pennsylvania Supreme Court

explained that to determine whether an entity is liable under a corporate negligence theory, the proper question is whether the plaintiff "offer[s] sufficient evidence of the relationship with [the nursing home] . . . to establish that duties of care exist." *Id.* at 606. In order to determine whether an entity is subject to corporate negligence liability, a court should not ask whether "the entity is a hospital or like a hospital, but rather whether a duty of care exists between the entity and the injured person." *Murzynski v. Erie County*, No.1:15-cv-00195, 2016 WL 5872430, at *7 (W.D. Pa. Oct. 7, 2016) (citing *Scampone*, 57 A.3d at 606). Courts must determine this by applying Section 323 of the Restatement (Second) of Torts[5] or the factors established in *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000). *See Scampone*, 57 A.3d at 606. The Third Circuit has noted that Section 323 is "particularly relevant . . . where a party undertakes a task and possibly fosters reliance by the plaintiff on his efforts." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 217 (3d Cir. 2010) (quotation omitted).

### C.

#### i.

#### *Count 1: Negligence Against Simpson House*

Simmons alleges that while Ola was a resident of Simpson House she developed avoidable and serious pressure sores and lost nearly 10 % of her body weight. The pressure sores and weight loss accelerated the deterioration of Ola's health which led to her later

---

[5] One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) Torts § 323 (1965).

hospitalization and ultimate death. Simpson House's negligent acts included the failure to turn and reposition Ola and the failure to document her deteriorating skin condition. By the time Ola left Simpson House, she had developed numerous medical conditions, including acute injury related to dehydration and various infections, none of which she had prior to her admission to the facility. These alleged facts are sufficient to state a claim for negligence.

Simmons also conclusorily alleges over two dozen violations of various federal and state regulations and statutes. He claims that Simpson House violated these statutes and then proceeds to paraphrase and/or quote directly from the statute or regulation in question. These allegations are legal conclusions which the Court need not accept as true. *See Iqbal*, 556 U.S. at 678.[6]

### *Count 2: Corporate Negligence Against Simpson House*

In Count 2, Simmons asserts a corporate negligence claim against Simpson House. Much of Simmons's allegations are too general and insufficient to state such a claim. *See, e.g.*, (2d Am. Compl. ¶ 104–106, 111). Simmons does allege, however, that Simpson House was "responsible for the total health care of [Ola] while she was a resident," (*id.* ¶ 108), and that Ola was "totally dependent upon [the] staff for her mental, physical, psycho-social and medical needs," (*id.* ¶ 14). These facts are important in assessing whether Simpson House owed a duty to Ola under *Scampone* and *Thompson*. The *Scampone* court held that "a nursing home . . . [is] subject to potential direct liability for negligence, where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care." 57 A.3d at 584. *Scampone* directs the Court to the factors articulated in *Althaus* to evaluate this question of duty. Among the factors relevant here is "the relationship between the parties." *Althaus*, 756 A.2d at 1169.

---

[6] The Court will not analyze each statute or regulation cited to determine if it can support a theory of negligence *per se*. Negligence *per se* is not a separate cause of action, and because the Court has determined that Simmons has pled enough facts to state a claim for negligence, it need not determine at this time whether any of these regulations can support a theory of negligence *per se*.

Ola was a resident-patient at Simpson House who was completely dependent on its staff for her medical needs. Moreover, it is foreseeable that a patient in Ola's situation could be harmed if Defendants neglected her. *See id.* (discussing as an element of duty being "the nature of the risk imposed and foreseeability of the harm incurred"). Simmons pleads enough facts to establish that Simpson House owed Ola a duty of care. The allegations against Simpson House, *see supra* subsection III.C.i, suggest Simpson House may have breached this duty.

### Count 3: *Negligence* per se *Against Simpson House*

Simmons brings a separate claim for negligence *per se* against Simpson House. Negligence *per se* is "the law's acknowledgement that through an individual's violation of a statute or ordinance, it is possible to show that the individual breached his duty to behave as a reasonable person, *i.e.*, that the individual was negligent." *Walters v. UPMC Presbyterian Shadyside*, 144 A.3d 104, 122 (Pa. Super. Ct. 2016) (quotation omitted). Several courts in this Circuit have explained, however, that negligence *per se* is not a separate cause of action, but is instead a theory of liability that supports a negligence claim. *See Daniel Boone*, 187 F. Supp. 2d at 407; *see also Deitrick v. Costa*, No.___, 2015 WL 1605700, at *18 (M.D. Pa. Apr. 9, 2015) (citing *Daniel Boone*, 187 F. Supp 2d at 407); *Russel v. Chesapeake Appalachia, LLC*, No.4:14-cv-00148, 2014 WL 6634892, *3 (M.D. Pa. Nov. 21, 2014); *Ramsey v. Summers*, No. 10-cv-00829, 2011 WL 811024, at *2 (W.D. Pa. Mar. 1, 2011) (citing *Zaborowski v. Hospitality Care Ctr. of Hermitage, Inc.*, 60 Pa. D. & C. 4th 474, 498 (Pa. Com. Pl. 2002)). Negligence *per se* is an "evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty." *Deitrick*, 2015 WL 1605700, at *18.

The Court dismisses Count 3 against Simpson House because it is subsumed within Counts 1 and 2.[7]

### ii.

Simmons sues Prime-Roxborough under vicarious liability and corporate negligence theories. He asserts that upon admission to Prime-Roxborough Ola was diagnosed with various medical issues including kidney injury related to dehydration and septic shock. (*Id.* ¶ 26.) Simmons contends that his mother developed serious pressure sores while at Simpson House but that Prime-Roxborough did not treat Ola's pressure sores until six days after her admission. (*Id.* ¶¶ 20, 32–37.) Additionally, Simmons alleges that Ola's pressures sores grew worse during her stay at Prime-Roxborough. (*Id.* ¶¶ 42, 43, 46, 47, 48, 52, 55–57.)

### *Count 4: Negligence Against Prime-Roxborough*

Simmons makes a number of general allegations against Prime-Roxborough indicating that it, *inter alia,* "permitted neglect," failed to timely notify family members of Ola's status and failed to hire and train competent staff. (*Id.* ¶ 135.) These allegations are too vague to be entitled to a presumption of truth. *See Schuchardt*, 839 F.3d at 347 ("[T]he presumption of truth

---

[7] At oral argument, counsel for Simmons directed the Court to the Pennsylvania Superior Court's recent decision in *Echeverria v. Holley*, 142 A.3d 29 (2016) to support her argument that negligence *per se* could stand alone as its own count. In *Echeverria*, plaintiffs sought to amend their complaint after the statute of limitations had expired to add allegations of negligence *per se*. The Superior Court affirmed the trial court's refusal to allow amendment. The court first acknowledged that "negligence *per se* is simply a variant of ordinary negligence . . . and serves as an evidentiary presumption." *Echeverria*, 142 A.3d at 29. The court concluded, however, that allowing amendment in this case "would be tantamount to allowing a new cause of action outside the statute of limitations" because it would be a "significant alternation of the evidentiary burdens allocated to the parties under the theory of ordinary negligence." *Id.* "Such a redistribution of the parties' obligations is akin to the introduction of a new legal theory outside the limitations period" which is forbidden by the procedural rules. *Id.*

*Echeverria* acknowledges that negligence *per se* is "simply a variant of ordinary negligence." *Id.* In Simmons's case, Simmons has put Simpson House on fair notice that he intends to pursue a theory of both ordinary negligence and negligence *per se*. This was not true in *Echeverria*. Simmons's negligence *per se* count is subsumed within his claims for negligence.

attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on their face.'" (quoting *Iqbal*, 556 U.S. at 679)).[8]

Simmons asserts, however, that Prime-Roxborough failed "to create an adequate pressure sore risk assessment." (2d Am. Compl. ¶ 135.)  This is the only contention that relates to the factual allegations made against Prime-Roxborough.  If it is true that Ola had pressure sores when she was first admitted to Prime-Roxborough but that such sores were not treated for nearly a week or were allowed to worsen over time, Simmons can state a negligence claim against Prime-Roxborough.[9]

### Count 5: Corporate Negligence Against Prime-Roxborough

Simmons's direct negligence claim against Prime-Roxborough suffers from many of the same flaws discussed above.  He conclusorily and generally asserts that Ola's death was "proximately caused by the willful or wanton conduct of [Prime-Roxborough] along with their reckless indifference to the rights of others . . . ." (2d Am. Compl. ¶ 138.)  Simmons baldly asserts that Prime-Roxborough violated various state and federal statutes and regulations without alleging facts explaining how these purported violations occurred, aside from claiming generally that Prime-Roxborough "violated these fundamental laws and regulations on a routine basis engaging in a pattern and practice of conduct prohibiting [sic] by law." (*Id.* ¶ 140.)  Moreover, Simmons never specifies which duty under *Thompson* Prime-Roxborough purportedly breached.  However, the duty to "oversee all persons who practice medicine within its walls as to patient care" seems to fit closest to his allegations.  *Thompson*, 591 A.2d at 707.

---

[8]     Simmons also conclusorily asserts that Prime-Roxborough violated a number of Pennsylvania statutes and federal regulations.  Nowhere in his complaint, however, does Simmons explain when or how these particular statutes and regulations were violated and the Court need not credit such legal conclusions.  *See Iqbal*, 556 U.S. at 678.

[9]     Because Simmons has stated a claim for negligence, the Court need not evaluate whether any of the regulations cited against Prime-Roxborough can support a theory of negligence *per se*.

A hospital can be held liable under *Thompson* "where there is clear evidence of a worsening condition over a prolonged period of time, where hospital personnel in positions of responsibility must necessarily have been aware of substandard care." *Estate of Goldberg v. Nimoityn*, ___ F. Supp. 3d ___, No.14-980, 2016 WL 3362056, at *8 (E.D. Pa. June 17, 2016). Simmons contends that his mother was admitted to Prime-Roxborough hospital with serious pressures sores, but these sores went untreated for nearly a week. *See supra* subsection III.C.ii.

The Court has already found that Simmons has stated a claim against Prime-Roxborough under a vicarious liability theory. While most of his allegations of direct liability against Prime-Roxborough are conclusory, Prime-Roxborough owed Ola duties of care under *Thompson*. In light of this, and the Pennsylvania Supreme Court's acknowledgement of the "somewhat obscure[]" distinction between vicarious and direct liability claims against a corporation, *see Scampone*, 57 A.3d at 587, Simmons may proceed to discovery on this claim.

## IV.

In Counts 8, 9, 10, and 11 Simmons alleges wrongful death and survival claims against Simpson House and Prime-Roxborough. The purpose of a wrongful death claim is to compensate a spouse, parent or child for "pecuniary loss they have sustained as a result of the death of the decedent." *Kiser*, 648 A.2d at 4. A survival claim is "brought by the administrator of the decedent's estate in order to recover the loss to *the estate of the decedent* resulting from the tort." *Id.* (emphasis added).

### A.

#### *Count 8: Wrongful Death Against Simpson House*

Simmons alleges that Simpson House's negligence led to his mother's avoidable pressure sores and excessive weight loss, both of which "accelerated the deterioration of her health and

15

physical condition," (*id.* ¶ 74), and ultimately led to her death.  Simpson House argues that because Ola received intervening care from four other healthcare providers, whatever Simpson House did or did not do could not have proximately caused Ola's death.  (Def.'s Mot., at 4, ECF No. 47.)  The proximate cause inquiry, however, is inherently fact based and generally left to the jury.  *See Giehl*, 2012 WL 1183719, at *5 (citation omitted).  Moreover, the Pennsylvania Supreme Court has "long held that a defendant is not relieved from liability because another concurring cause is also responsible for producing injury."  *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995) (citation omitted).  Indeed, "[t]wo or more causes may contribute to and be the proximate cause of an injury."  *Giehl*, 2012 WL 1183719, at *5 (citation omitted).

An intervening act or cause can relieve a party of liability.  *Id.* (citing *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1060 (Pa. Super. 2003)).  To determine if such an intervening act or cause is sufficient to do so, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable."  *Powell*, 653 A.2d at 623.  Here, it was foreseeable that if Ola's malnutrition and pressure sores became serious enough, she would require hospitalization. The Court cannot determine, at this stage, if this intervening care is sufficient to sever the causal chain and relieve Simpson House of liability.

### *Count 9: Survival Against Simpson House*

Because Simmons has adequately pled a cause of action for negligence related to Simpson House's treatment of Ola's pressure sores, *see* (2d Am. Compl. Counts 1 & 2), he has also pled enough facts to state a survival claim against Simpson House on behalf of Ola's estate. *See* 42 P.S. § 8302.

### B.

### *Count 10: Wrongful Death Against Prime-Roxborough*

Simmons alleges that Prime-Roxborough's substandard treatment—and failure to treat Ola's pressure sores—accelerated her health problems and led to her death. The Court has already concluded that Simmons has stated a claim for negligence against Prime-Roxborough. *See* (2d Am. Compl. Counts 4 & 5). Because causation is a question of fact, the Court cannot at this stage evaluate whether any intervening care Ola received is sufficient to sever the causal chain and relieve Prime-Roxborough of liability for Ola Simmons's alleged wrongful death.

### *Count 11: Survival Against Prime Roxborough*

Because Simmons has adequately pled a cause of action for negligence related to Prime-Roxborough's treatment of Ola's pressure sores, *see* (2d Am. Compl. Counts 4 & 5), he has also pled enough facts to state a survival claim against Prime-Roxborough on behalf of Ola's estate. *See* 42 P.S. § 8302.

### V.

### *Count 18: UTPCPL Against Simpson House*

The purpose of the UTPCPL is to protect consumers from "fraud and unfair or deceptive business practices." *Commw. ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (citing C*ommw. ex rel. Creamer v. Monumental Prop., Inc.*, 329 A.2d 812 (Pa. 1974)). The statute prohibits "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce" and provides a private right of action to any person who "purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property . . . ." 73 P.S. § 201–1, –9.2(a). A plaintiff may state a cause of action under the UTPCPL by satisfying

the elements of common-law fraud or by otherwise alleging deceptive conduct. *See Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 219 (3d Cir. 2008).

Simmons fails to state a claim under the UTPCPL. He alleges generally that Simpson House "willfully made representations to Plaintiff that they would provide the basic care required by their residents." (2d Am. Compl. ¶ 203.) Simmons claims that these representations were made on Simpson House's website, in their marketing materials and their billing statements. (*Id.* ¶ 204.) He conclusorily asserts that Simpson House's "deceptive, misleading, and unfair statements and practices" violated 73 P.S. §§ 201-2(4)(v), (ix), (x), and (xxi). He provides no factual allegations to support these claims, such as "indicat[ing] the type of services deceptively encouraged." *Hope v. Fair Acres Geriatric Ctr.*, 174 F. Supp. 3d 880, 893 (E.D. Pa. 2016).

The Court does not know what Simmons means when he refers to Simpson House's representations regarding "basic care." This is important because the UTPCPL "does not apply to providers of medical services." *Walter v. Magee-Womens Hosp. of UPMC Health Sys.* 876 A.2d 400, 407 (Pa. Super. Ct. 2005); *see also Foflygen v. R. Zemel, M.D. (PC)*, 615 A.2d 1345, 54–55 (Pa. Super. Ct. 1992) ("[T]he legislature did not intend the Act to apply to physicians regarding medical services."); *Gatten v. Merzi*, 579 A.2d 974, 976 (Pa. Super Ct. 1990).

In *Goda v. White Cliff Leasing P'ship*, 62 Pa. D. & C. 4th 476, 489 (Pa. Com. Pl. 2003), the Mercer County Court of Common Pleas analyzed a UTPCPL claim brought against a nursing home. The court relied on the Pennsylvania Superior Court's decision in *Foflygen* to explain that a nursing home could be held liable under the statute, but only for the non-medical services it offered. It explained that medical services "are those evaluative, diagnostic, preventative,

therapeutic and supervisory services that are customarily provided by or at the direction of a physician or health care worker in order to treat a patient." *Id.*

Thus, if by "care" Simmons means medical services rendered by Simpson House, his allegations are beyond UTPCPL's protections. *See also Zaborowski v. Hosp. Care Ctr. of Hermitage, Inc.*, 60 Pa. D. & C. 4th 474, 494 (Pa. Comm. Pl. 2002) ("[T]his court holds that a plaintiff can maintain a private cause of action against a nursing home under the UTPCPL based only upon the non-medical services provided by the nursing home."). Simmons, however, incorporated all prior paragraphs of the complaint into his UTPCPL claim. (2d Am. Compl. ¶ 202.) In Count 3, Simmons alleges that "Defendants, through their advertising and promotional material and information sheets, advertised the Simpson House Nursing Home to the general public as being able to provide *skilled nursing and medical care*, to sick elderly, frail and vulnerable individuals such as the late Ola Simmons." (*Id.* ¶ 113 (emphasis added).) This allegation indicates that Simmons may be impermissibly attempting to bring a claim under the UTPCPL for medical care. *See Walter*, 876 A.2d at 407; *Foflygen*, 615 A.2d at 1354–55; *Goda*, 62 Pa. D. & C. 4th at 489. Count 18 is dismissed with leave to amend.[10]

## VI.

Prime-Roxborough and Simpson House have also moved under Federal Rule of Civil Procedure 12(f) to strike certain allegations in the complaint. Both take issue, *inter alia*, with Simmons references and characterizations of defendants' conduct as "abuse," "willful or wanton," and "reckless." *See, e.g.*, (Def.'s Mot to Dis., at 20, ECF No. 48).

---

[10] While Simmons has had ample opportunity to amend his complaint, this is the first time the Court has substantively addressed this claim. The Court cannot state that amendment would be futile and will grant Simmons leave to amend just this count. *See* Fed. R. Civ. P. 15(a).

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Siler v. Cmty. Educ. Ctrs., Inc.*, No. 14-5019, 2014 WL 4931291, *4 (E.D. Pa. Oct. 2, 2014) (quotation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.* Simmons's descriptions of events as "abuse" and "willful or wanton," among others, while conclusory, do not rise to the level necessitating striking the references from the pleading.[11]

An appropriate order follows.

                                                     BY THE COURT:

                                                     */s/ Gerald J. Pappert*
                                                     GERALD J. PAPPERT, J.

---

[11] Prime-Roxborough and Simpson House also argue that Simmons has failed to state a claim for punitive damages. There are no separate claims for punitive damages in the complaint.

20