## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN SIMMONS,

          *Plaintiff,*

     v.

SIMPSON HOUSE, INC., *et al.*,

          *Defendants.*

CIVIL ACTION
No. 15-06636

**PAPPERT, J.**                                          **April 10, 2017**

### MEMORANDUM

John Simmons filed this lawsuit in his own right and as the administrator of his mother Ola's estate. He alleges that Ola Simmons moved into Simpson House Nursing Home because she was suffering from senile psychosis and episodic incontinence. During her five-month stay, she developed pressure sores, experienced excessive weight loss and contracted multiple infections. Ola was transferred to Prime-Roxborough Hospital where her condition continued to decline. After less than a month at Prime-Roxborough, she moved to Kindred Hospital and died roughly two months later while in hospice care.

John Simmons asserts claims of negligence, wrongful death and survival, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against Simpson House and Simpson House, Inc. ("Simpson House"), Prime Healthcare Services-Roxborough, LLC ("Prime-Roxborough") and Kindred Hospital-South Philadelphia and Kindred Healthcare Inc. ("Kindred").

Kindred filed a motion to dismiss Simmons's claims and enforce an arbitration agreement. (ECF No. 82.) The Court grants the motion with respect to claims brought

on behalf of Ola Simmons, but denies the motion with respect to John Simmons's wrongful death claim.

# I.

## A.

John Simmons filed his Second Amended Complaint on July 28, 2016. (ECF No. 45.) All Defendants filed motions to dismiss the Second Amended Complaint. Kindred's motion contended that Simmons's claims should be dismissed because Ola, through her legal guardian, agreed to arbitrate any dispute between her and Kindred. (ECF No. 55.) The Court denied Kindred's motion without prejudice and ordered limited discovery on the question of arbitrability. (ECF No. 67, at n.1.) Kindred's renewed motion to dismiss is before the Court. (ECF No. 82.)

## B.

This case's factual background is detailed in a prior opinion. *See Simmons v. Simpson House, Inc.*, ___ F. Supp. 3d ___, No. 15-06636, 2016 WL 7209931, at *1 (E.D. Pa. Dec. 12, 2016).

On May 7, 2014, Ola's court-appointed guardian, Yvette Rogers, signed Kindred's admissions paperwork. (Def.'s Statement of Facts ¶ 3, ECF No. 82 (hereinafter "SOF").) The papers included an Alternative Dispute Resolution Agreement ("the Agreement"). (Def.'s Mot., Ex. B, ECF No. 82-5, at 5, hereinafter "ADR".) Rogers, a licensed attorney, had full authority to act on Ola's behalf. (SOF ¶ 9; Def.'s Mot., Ex. D., ECF No. 82-7.) By signing the Agreement, Rogers—and therefore

Ola—agreed to resolve "any and all disputes that might arise between the Patient[1] and the Hospital through alternative dispute resolution methods, including mediation and arbitration." (ADR, at 1.) John Simmons did not sign the Agreement. (ADR, at 5.)

When deposed, Simmons acknowledged that Rogers was Ola's court-appointed guardian, possessing full legal authority to make decisions on Ola's behalf. (Simmons Dep., at 20:9–12; 34:6–9, ECF No. 82-6.) Simmons explained that Rogers was appointed Ola's guardian in 2011 or 2012 after a hearing where the court "assumed that [Ola] wasn't being properly taken care of and that her funds [were] being misused by another relative. So, they appointed her as the guardian." (*Id.* at 7:5–8:3.)

## II.

## A.

"When it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation and citation omitted). However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." *Id.* (quotation and citation omitted).

---

[1]     The term "Patient," is defined as "the Patient, his/her Guardian or Attorney in Fact, or any person acting as the Patient's Legal Representative whose claim is derived through or on behalf of the patient." (ADR, at 1.)

The Court held it was "not clear based on the face of the complaint and documents relied upon in the complaint that Simmons's claims [were] subject to an enforceable arbitration clause." (ECF No. 67, at n.1.) Accordingly, the Court ordered limited discovery. (*Id.*) Limited discovery on the question of arbitrability is complete; Kindred's renewed motion to compel arbitration is now properly reviewed under the summary judgment standard. *See Guidotti*, 716 F.3d at 776.

**B.**

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary

judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

"In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the [Federal Arbitration Act ("FAA")] envisions." *Guidotti*, 716 F.3d at 776 (quotation and citation omitted).

## III.

Kindred moved to dismiss all of Simmons's claims, on the grounds that arbitration must be compelled because Ola's legal representative and guardian signed the Agreement upon Ola's admission to Kindred's facility. The Court must first determine if the Agreement is valid. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). If it is, the Court must then decide if Simmons's Complaint falls within its scope. *Id.* "When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate." *Trippe*, 401 F.3d at 532 (citing *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1376–77 (3d Cir. 1993)). Moreover, "[w]hen determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability." *Id.* Simmons claims that the Agreement is invalid but argues alternatively that even if it is valid, his wrongful death claim against Kindred is beyond its scope.

## A.

### i.

"The FAA requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *James v. Global Tellink Corp.*, ___ F.3d ____, 16-1555, 2017 WL 1160893, at *2 (3d Cir. Mar. 29, 2017); *see also* 9 U.S.C. § 3. "Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). "To determine whether a valid arbitration agreement exists" the Court must "apply ordinary state-law principles that govern the formation of contracts." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Pennsylvania "has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the [FAA])." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013). "In general, to determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2009) (citations omitted). "In determining whether the parties agreed to arbitrate, courts should . . . adopt[ ] an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties." *Id.* (quoting *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287–88 (Pa. Super. Ct. 2005).

Simmons does not contend that Rogers lacked the authority to sign the Agreement, nor does he suggest that the Agreement was not supported by consideration or that it was unconscionable.[2]  Instead, relying on *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248 (Pa. 2015), Simmons argues that the Agreement is invalid because it provides for the now-defunct National Arbitration Forum ("NAF") to conduct the arbitration and also explains that the "conduct of the ADR process shall be in accordance with the NAF Meditation Rules and NAF Code of Procedure."  (ADR ¶ VI.A.)

Simmons raises two points related to the NAF:  First, he claims that because the NAF "is no longer in operation with respect to consumer claims" it is "impossible for the arbitration to proceed."[3]  (Pl.'s Resp., at 10, ECF No. 83.)  Second, Simmons claims that because the Agreement requires the use of NAF Code of Procedure, and the NAF Code itself states that only the NAF may administer the code, this provision renders the

---

[2]      Prior to discovery, Simmons did raise these arguments, along with others.  Simmons has not made any such contentions in response to Kindred's motion.  The Court considers these arguments waived, though they fail in any event. The "Agreement is supported by consideration because the parties mutually agreed to be bound to utilize alternative dispute resolution measures." *Clouser v. Golden gate Nat'l Senior Care, LLC*, No. 3:15-33, 2016 WL 1179214, at *5 (W.D. Pa. Mar. 23, 2016); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).  The Agreement is not procedurally unconscionable.  It specifies in multiple locations that it is a voluntary agreement that need not be signed by the patient (or their representative).  While Rogers may have been in a weaker bargaining position, "[c]ontracts cannot be deemed unconscionable simply because of disparity in bargaining power . . . [the Court's] role is to distinguish acceptable bargaining situations from those which violate strong public policy." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (internal quotations omitted).  The Agreement is not substantively unconscionable because it does not "unreasonably or grossly favor[ ] one side." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *see also Quilloin*, 673 F.3d at 230 ("An arbitration agreement cannot be construed as substantively unconscionable where it does not alter or limit the rights and remedies available to a party in the arbitral forum." (quotation omitted)).

[3]      The NAF "can no longer accept arbitration cases pursuant to a consent decree it entered with the Attorney General of Minnesota." *See Stewart v. GGNSC-Canonsburg, LP*, 9 A.3d 215, 217 (Pa. Super. Ct. 2010).

Agreement invalid.  The Pennsylvania Superior Court and the Third Circuit Court of Appeals have already rejected these arguments.

1.

Courts agree that "an arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' choice of forum is an 'integral part' of the agreement to arbitrate, rather than 'an ancillary logistical concern.'" *Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 218–19 (Pa. Super. Ct. 2010); *see also Khan v. Dell Inc.,* 669 F.3d 350, 354 (3d Cir. 2012).  "In other words, a court will decline to appoint a substitute arbitrator . . . only if the parties' choice of forum is so central to the arbitration agreement that the unavailability of that arbitrator brings the agreement to an end."  *Khan*, 669 F.3d at 354 (quotation and citation omitted).  Courts use this standard when interpreting the applicability of § 5 of the FAA, which provides for court appointment of an arbitrator in the event of a vacancy.  9 U.S.C. § 5.

In *Wert*, the Supreme Court of Pennsylvania invalidated an arbitration agreement because the NAF's "participation was integral" to the agreement, notwithstanding the agreement's severability clause or § 5 of the FAA.  *Wert*, 124 A.3d at 1260.  Key to the court's reasoning was language in the agreement that any disputes "shall be resolved ***exclusively*** by binding arbitration to be conducted . . . in accordance with the NAF Code of Procedure."  *Id.* at 1263.  The court held that "post-consent decree, Section five of the FAA cannot preserve NAF-incorporated arbitration agreements unless the parties made the NAF's availability non-essential by specifically varying the terms of its procedure.  Regardless of whether Section five **may** apply where there is a lapse by the administrator, by its own rules, the NAF must administer

8

its code unless the parties agree to the contrary." *Id.* at 1263; *but see Khan v. Dell*, 669 F.3d 350, 353–55 (3d Cir. 2012) (finding a similar arbitration provision, which required all disputes to be "RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM," ambiguous and thus holding the arbitration agreement valid).

**2.**

The Pennsylvania Superior Court subsequently criticized *Wert*. *See MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209 (Pa Super. Ct. 2015) (en banc), *appeal denied* No. 700 EAL 2015, 2016 WL 6808116 (Table) (Pa. Nov. 17, 2016). *MacPherson* explained that *Wert* "was a memorandum decision devoid of precedential value." *Id.* at 1222 n.6. It then distinguished the agreement in its case from the agreement in *Wert*. "Since the parties [in *Wert*] . . . expressly agreed that any disputes would be resolved **exclusively** through arbitration with the NAF, [*Wert*] found the **exclusive** forum selection clause to be an integral part of the arbitration agreement." *Id.* The agreement in *MacPherson*, however, was "glaringly distinct due to the absence of any reference to the exclusivity of NAF." *Id.* at 1223.

That agreement stated that "[i]f the Parties mutually agree in writing not to select NAF **or if the NAF is** unwilling or **unable to serve as the Administrator,** the Parties **shall** agree upon another independent entity to serve as the Administrator, unless the Parties mutually agree to not have an Administrator." *Id.* 1223–24. This language was "permissive, not mandatory" and provided for an alternative to the NAF. *Id.* at 1224. No such provision existed in the agreements in *Wert*. *Id.*

*MacPherson* also rejected the argument that the agreement's reference to use of the NAF Code of Procedure rendered the agreement unenforceable. *Id.* "Where the arbitration clause selects merely the rules of a specific arbitral forum, as opposed to the forum itself, and another arbitral forum could apply those rules, the unavailability of the implicitly intended arbitral forum will not require the court to condemn the arbitration clause." *Id.* at 1225 (quoting *Stewart*, 9 A.3d at 219.) The court concluded that references to the NAF Code of Procedure were not integral to the agreement and could be severed in accordance with the agreement's severability clause. *Id.*; *see also Khan*, 669 F.3d at 356 (dismissing a similar argument because the NAF rules requirement was "ambiguous . . . [because] [t]he NAF's rules provide that they shall be interpreted in a manner consistent with the FAA and that, if any portion of the NAF rules are found to be enforceable, that portion shall be severed and the remainder of the rules shall continue to apply," and notwithstanding disagreement among courts on this question, "liberal federal policy in favor of arbitration" supported its outcome).

**3.**

The Agreement in this case is similar to that in *MacPherson*:

> Conduct of Alternative Dispute Resolution ("ADR"). The ADR process will be conducted by an independent impartial entity that is regularly engaged in providing mediation and arbitration services. The National Arbitration Forum (NAF) **may serve** as this independent entity. **In the event that NAF is** unwilling or **unable** to conduct the mediation or arbitration, **or the parties mutually agree that NAF should not conduct** the mediation or arbitration, then **by mutual agreement the parties shall select another independent impartial entity** that is regularly engaged in providing mediation and arbitration services. Requests for ADR and the conduct of the ADR process shall be in accordance with the NAF Mediation Rules and NAF Code of Procedure (hereinafter, collectively, the "NAF Rules of Procedure").

(ADR ¶ VI.A. (emphasis added).)

The Agreement contains "permissive, not mandatory" language akin to the agreement in *MacPherson*; it is not the exclusive language found in *Wert*. *See MacPherson*, 128 A.3d at 1224. Because the NAF is not the exclusive arbitrator under the Agreement, this term is not integral to the Agreement.

Moreover, while paragraph VI.A suggests mandatory use of NAF rules and procedure, other sections of the Agreement cast doubt on that conclusion. Paragraph VI.C says: "*Unless the parties agree otherwise*, the mediator will be selected as described in the NAF Rules of Procedure . . . [and] [*u*]*nless the parties agree otherwise*, the arbitrator(s) shall be selected as described in the NAF Rules of Procedure." (ARD ¶ VI.C (emphasis added).) Indeed, the Agreement demonstrates that the "NAF's availability [was] non-essential" because it "specifically var[ies] the terms of its procedure." *Wert*, 124 A.3d at 1263. Accordingly, it is not integral to the Agreement and, as in *MacPherson*, because another arbitral forum could apply the NAF rules and procedure, the Agreement is valid. *MacPherson*, 128 A.3d at 1225 (quoting *Stewart*, 9 A.3d at 219); *see also Khan*, 669 F.3d at 355.

**B.**

In the alternative, Simmons argues that because he was not a party to the Agreement, *his* wrongful death claim—unlike those claims brought on behalf of Ola's estate—is beyond its scope.

**i.**

The purpose of a wrongful death claim is to compensate a spouse, parent or child for "pecuniary loss they have sustained as a result of the death of the decedent." *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994). A survival claim, in contrast, is "brought by the

administrator of the decedent's estate in order to recover the loss to *the estate of the decedent* resulting from the tort." *Id.* (emphasis added). Simmons alleges both types of claims against Kindred; he correctly argues that the Agreement does not preclude the former.

"The Pennsylvania Wrongful Death and Survival Act . . . [was] enacted to allow the survival of viable causes of action for bodily injury to a deceased beyond the life of the victim." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 741 (3d Cir. 2004). The Act "did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted." *Id.* "Thus, if the underlying tort theory [fails], then the wrongful death or survival claim will fail." *Id.*; *see also Becker v. Carbon Cty.*, 117 F. Supp. 841, 847 (M.D. Pa. 2016) ("As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes and such theory is subject to defenses." (quotation omitted)).

Under Pennsylvania law, an action for wrongful death may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute. *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994); *see also Pisano*, 77 A.3d at 656. Thus, "two separate and distinct causes of action arise from a single injury, one dependent on the rights of action which the decedent possessed at the time of her death, and the other dependent on the rights of action that the claimants, as named by statute, possess." *Pisano*, 77 A. 3d at 656.

### ii.

The Agreement does not bind Simmons personally and his wrongful death claim is not subject to arbitration. *See Pisano*, 77 A.3d at 663. In *Pisano*, a nursing home

resident signed a contract upon his admission to the home in which he agreed to binding arbitration of any disputes. *Pisano*, 77 A.3d at 653. The *Pisano* court held that the arbitration agreement was not binding against the decedent's children, *id* at 663, because they possessed a "separate and distinct" cause of action. *Id.* at 656; *see also Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 492 (Pa. Super. Ct. 2016); *see id.* at 494 ("Thus, to enforce an arbitration clause in the wrongful death context, the claimant's signature is necessary to demonstrate that she agreed to submit her claim to binding arbitration.").[4]

## IV.

The FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, (1983). "Accordingly, the United States Supreme Court has held that, when a defendant has two substantive disputes with separate plaintiffs arising from the same incident, and only one of those plaintiffs is subject to an arbitration agreement, then, as a matter of law under the FAA, the two claims must be heard in separate forums." *N.*

---

[4]     Prior district courts incorrectly perceived a conflict between *Pisano* and the Third Circuit's decision in *Grbac v. Reading Fair Co.*, 688 F.2d 215 (3d Cir. 1982). *Grbac* held that a release for personal injuries and death signed by a husband before his death barred his widow's wrongful death suit. *Id.* at 215–16. In *Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483 (Pa. Super. Ct. 2016), the Superior Court explained that *Pisano*'s holding is narrow. *See Valentino*, 150 A.3d at 492. "[W]hile a third party's wrongful death claim is not derivative of the decedent's right of action, a wrongful death claim still requires a tortious injury to succeed." *Id.* at 493. "Pennsylvania case law has long held that a wrongful death claimant's substantive right to recover is derivative of and dependent upon a tortious act that resulted in the decedent's death." *Id.* Thus, if the decedent signed a liability waiver, there are no underlying tortious actions on which to base the wrongful death claim. A broader reading of *Pisano* would "conflate[ ] the concept of a right of action under Pennsylvania's Wrongful Death Act . . . with the principle that a claimant's substantive right to obtain recovery always remains, even in the wake of *Pisano*, 'depend[ent] upon the occurrence of a tortious act.'" *Id.* at 493–94 (quoting *Pisano*, 77 A.3d at 654).
        Thus, a liability waiver signed by the decedent *does* bar a wrongful death claim; the arbitration agreement in *Pisano*, in contrast, raises a "uniquely procedural issue that differs greatly from the enforcement of a valid liability." *Valentino*, 150 A.3d at 484. Accordingly, there is no conflict between the Third Circuit's decision in *Grbac* and the Superior Court's decision in *Pisano*.

*Health Facilities*, 993 F. Supp 2d at 496 (citing *Moses H.*, at 19–20). This piecemeal litigation is required "irrespective of any concomitant decline in judicial efficiency." *Nationwide Mut. Fire Ins. Co. v. George v. Hamilton, Inc.*, 571 F.3d 299, 309 (3d Cir.2009).

Courts in this Circuit have "encountered cases where a nursing home or skilled nursing facility executed an arbitration agreement with the decedent or the decedent's agent/personal representative, and have decided to sever the decedent's survival claims from the heirs' wrongful death claims." *See Grkman v. 890 Weatherwood Lane Operating Co., LLC*, 189 F. Supp. 3d 513, 525 (W.D. Pa. 2016) (collecting cases). However, until recently, district courts recognized a split between Pennsylvania state courts and federal courts regarding whether a survival claim subject to arbitration could be severed from a wrongful death claim in light of Pennsylvania Rule of Civil Procedure 213(e). *See e.g., Clouser v. Golden Gate Nat'l Senior Care, LLC,* No. CV 3:15-33, 2016 WL 1179214, at *8 (W.D. Pa. Mar. 23, 2016). While federal courts had severed the survival and wrongful death claims, the Pennsylvania Superior Court in *Taylor v. Extendicare Health Facilities, Inc.* 113 A.3d 317, 321-28 (Pa. Super. Ct. 2015) held that Rule 213(e) controlled and barred severance.

Rule 213(e) "is a rule of compulsory joinder, providing that wrongful death and survival actions 'may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial." *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 500 (Pa. 2016). The Pennsylvania Supreme Court, however, recently reversed the Superior Court's decision in *Taylor*. *See id.* The court

concluded that "Rule 213(e) conflicts with the FAA, and is preempted." *Id.* at 510. Simmons's wrongful death claim must be severed from the survival claim.

The FAA provides that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall *on application of one of the parties*, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). No party has requested a stay, so the Court will dismiss without prejudice those claims against Kindred that are subject to arbitration. *See Ricci v. Sears Holding Corp.*, No. 14-3136, 2015 WL 333312, at *6 (D.N.J. Jan. 23, 2015). Kindred's motion is granted with respect to the survival claim and denied with respect to the wrongful death claim.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.